# Coleman, *et al.* v. Town of Eutaw, *et al.* and Town of Eutaw, *et al.*, v. Coleman, *et al.*

*Bill to Prevent Issuance of Bonds and Declare an Election Void.*

(Decided Nov. 12, 1908.    47 South. 703.)

1. *Equity: Jurisdiction; Election; Contest.*—The contest provided by section 7 of General Acts 1903, p. 59, being inappropriate, does not take from the chancery court jurisdiction to entertain a bill by tax payers against the municipality to enjoin the issuance of improvement bonds because of the alleged invalidity of the election at which the bonds were authorized; and equity has jurisdiction for the additional reason that the bill was filed to prevent the misuse of corporate power—the illegal creation of a debt against a municipality.

2. *Municipal Corporation; Election; Bond Issue; Constitutional Provisions.*—Section 222, Constitution 1901, declaring that the ballot shall contain certain words, in so far as it prescribes the form of ballot, is mandatory, and a failure to use the form prescribed invalidates the election.

[Coleman, et al. v. Town of Eutaw, et al. and Town of Eutaw, et al. v. Coleman, et al.]

3. *Same; Bonds; Election; Ballots.*—Under Section 222, Constitution 1901, on an election by a municipality to authorize a bond issue, the ballot used should contain the form prescribed by the Constitution, and should specify in the space "for" and "bond issue," and in the space "against" and "bond issue," the character of the bond to be voted on; and a ballot containing the caption announcing the general purposes of the election, and on two separate lines, with marginal extensions in each side, the words, "for bond issue" and "against bond issue," and below this, in parenthesis, a statement describing the bonds, including the amount, rate of interest, time, denomination, and purpose, was not a compliance with this provision, and an election held with such ballot was void.

4. *Municipal Corporations; Bonds; Several Issues; Election.*—Where separate ballots were provided for each set of bonds to be issued, it was no objection to the validity of the election that an election was held for each set of bonds at the same time and place.

5. *Same; Double Purpose.*—The fact that a proposed bond issue to purchase a water works and electric light plant was submitted to the electors in that shape did not invalidate the election, as involving the submission of a double purpose, the reasonable presumption being that the same comprised but one scheme of municipal improvement.

APPEAL from Greene Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Thomas W. Coleman, and others, against the town of Eutaw, and others, to enjoin the issue and sale of the bonds of the town. From a decree sustaining demurrers to the bill, complainants appeal, and respondents prosecute a cross appeal as to certain other questions. Reversed and remanded on original appeal. Affirmed on cross appeal.

S. D. & J. B. WEAKLEY and THOMAS W. COLEMAN, for appellant. The ballot was not in the form required by the Constitution.—Sec. 222, Const. 1901; *Varney v. Justice*, 6 S. W. 459; *Perry County v. Railroad Co.*, 58 Ala. 556; Cooley's Const. Lim. 78. The requirements of the statute were mandatory, not directory.—*Oakland Paving Co. v. Hilton*, 11 Pac. 9; *Smith v. The State*, 139 Ala. 115; *Beason v. Shaw*, 42 South. 611, and authorities supra. The purpose of each issue of bond was not separately submitted to the voter, so that he might vote

[Coleman, et al. v. Town of Eutaw, et al. and Town of Eutaw, et al. v. Coleman, et al.]

for or against the one or the other.—*Town of Woodlawn v. Cain*, 135 Ala. 371; *People v. Taswell County*, 22 Ill. 127; *Clark v. Hancock County*, 27 Ill. 310; *Lewis v. Baldwin county*, 12 Kan. 213; *Gas & Water Co. v. Elyria*, 57 Ohio St. 318; *McMillan v. Lee County*, 3 Ia. 311. The debt sought to be created was in excess of the Constitutional limit on the debt creating power of the municipality.—Simonton on Munic. Bonds, sec. 63.

HARWOOD & McKINLEY, and CABANISS & BOWIE, for appellee. The election would not have been void or illegal if there had been but one election with three propositions submitted each on separate ballots.—*Mabin v. City of Biloxi*, 28 South. 566. The ballots conformed to the requirements of the Constitution and the Acts. —Sec. 222, Const. 1901; Acts 1903 p. 59; sec. 12; 23 A. & E. Ency of Law, 526. The statute is directory not mandatory.—*Brugman v. Noyes*, 6 Wis. 1; *Montgomery v. Henry*, 144 Ala. 633; *Patton v. Watkin*, 131 Ala. 387; *Dudley v. Fitzpatrick*, 143 Ala. 162; 26 Kan. 396; 56 Ia. 396; 12 Wis. 558; 85 S. W. 786; 52 Mo. 513; 15 Ohio St. 577; 14 Am. Rep. 427; 29 Md. 377; 42 South. 676; 16 L. R. A. 754.

The objection sought to be raised cannot be done on collateral attack, and the objection to the form of the ballots have been waived or lost by a failure to contest the election.—*McDonald v. Ala. G. L. Ins. Co.*. 85 Ala. 410; *Blakey v. City of Montgomery*, 144 Ala. 481; *Black v. Tait*, 130 Ala. 514; *Montgomery v. Henry*, 144 Ala. 629; *Moulton v. Reeves*, 54 Ala. 324. The statutory mode of contest is exclusive and must be pursued.—*Janney v. Buell*, 55 Ala. 408; *Sheffield v. Bank*, 131 Ala. 185. The court cannot go behind the certificate of the board of canvassers.—*Blakey v. City of Montgomery*, *supra*; *Moulton v. Reed*, *supra*; 10 A. & E. Ency. of Law, 761.

McCLELLAN, J,—The bill in this cause was filed by Thomas W. Coleman and four other taxpayers and residents of Eutaw, in this state, for the purpose of enjoining issues of bonds of the municipality of the town of Eutaw as upon a compliance with the provisions of section 222 of the Constitution of 1901, and the act of the Legislature to be found in Acts 1903, p. 59 et seq., authorizing the issuance of bonds by municipalities under certain restrictions and by certain methods therein provided. A cross-appeal, by the respondents to the bill, brings up for review the questions to be considered and decided.

It is first insisted by the cross-appellants that since by section 7 of the act before mentioned provision is undertaken to be made for the contest of an election held thereunder through the process formulated for the contest of elections of justices of the peace, and since by section 1671 of the Code (1896) our courts of equity are forbidden jurisdiction of election contests, this bill is without equity. This objection is untenable, for the reason that the attempted assimilation of the method for contesting elections of officers is entirely inappropriate.—*Beason v. Shaw*, 148 Ala. 544, 42 South. 661. An additional, and perhaps stronger, reason is here present in the fact that the primary object and equity of the bill is to prevent the misuse of corporate power—the illegal creation of a debt against the municipality. True, the ascertainment vel non of this action may, and here does, involve the validity of an election; but the greater objective of the bill necessarily obscures the asserted equity denying jurisdiction of an inquiry into the validity of an election. That this conclusion is sound is demonstrated, we think, when it is considered that every condition precedent to the valid issue of such bonds may have been met including a perfectly valid election, yet,

[Coleman, et al. v. Town of Eutaw, et al. and Town of Eutaw, et al.
v. Coleman, et al.]

if that issue of bonds would result in creating a debt in
excess of the constitutional limitation for that munici-
pality, that issue of bonds would be void, valueless. The
invalidating cimcumstance could not inhere in the elec-
tion, but in the corporate power to so engage in excess
of the limitation. Authorities are abundant for the ex-
ercise in equity of injunctive relief in such cases.—
*Crampton v. Zabriskie,* 101 U. S. 601, 609, 25 L. Ed.
1070; Simonton on Munic. Bonds, §§ 156, 158, 159;
Harris on Munic. Bonds, pp. 281, 282. This disposes
of the preliminary question.

Three sets of bonds were proposed to be issued by the
town of Eutaw, viz., one for the purpose of constructing
streets, one for the purpose of purchasing or construct-
ing a public school building, and one for the purpose
of purchasing waterworks and electric light plant.
Separate ordinances, looking to the issue of each set
of bonds, were adopted by the governing body; and the
voters, in varying majorities, approved the mentioned
issues, three separate ballots being respectively employ-
ed as the medium of expression of the popular will. The
first ground of asserted invalidity of the bonds, if allow-
ed to issue, is that the ballot, in each case, was not in
the form prescribed by the Constitution. The act before
cited, in respect of the ballot, is a copy of the Consti-
tution. These ballots, respectively, contained, besides a
caption announcing the general purpose of the election,
on two separate lines, with marginal extension on either
side of each line, the words "For bond issue," and
"Against bond issue." Below this, in parenthesis, there
was printed on each set of ballots, corresponding to the
respective sets of bonds proposed to be issued, a state-
ment describing the bonds, including the amount, rate
of interest, time to run, denomination of each bond, and

the purpose of the issue. Section 222 of the Constitution, as presently important, is as follows: "The Legislature, after the ratification of this Constitution, shall have authority to pass general laws authorizing the counties, cities, towns, villages, districts or other political subdivisions of counties to issue bonds; (a) but no bonds shall be issued under authority of a general law unless such issue of bonds be first authorized by a majority vote by ballot of the qualified voters of such county city, town, village, district, or other political subdivision of a county, voting upon such proposition. The ballot used at such election shall contain the words: 'For _____ bond issue,' and 'Against _____ bond issue' (the character of the bond to be shown in the blank space), and the voter shall indicate his choice by placing a cross mark before or after the one or the other."

The point raised and urged for appellants is that the ballot was abortive, because of the failure to insert the character of the bond in the blank space between the words "For" and "bond issue," and between the words "Against" and "bond issue." Cross-appellants assert an answer to this insistence to be, viz: First, that in the preparation or form of the ballot the quoted constitutional provision is directory merely, not mandatory, and hence, in the absence of express pronouncement to the contratry, nonobservance is an irregularity at most; second, that, if mandatory, a substantial compliance was had by the printing of the mentioned description of the bond on the face of the ballot. The fact that mere place on the ballot of the character of the bond is the gist of the suggested invalidity of the proposed issues has necessarily quickened our sense of assurance to correctness before finally attaining a conclusion in the premises. At first blush the objection seemed to be only a sticking in the bark—hypercritical at best. Yet, when we consid

er that a constitutional, not a statutory, provision is involved, that conditions precedent are being dealt with, and that the intention of the Constitution makers, not our ideas of what may seem trivial or our notions of what might appear unnecessary particularity, is the pith of the inquiry, we cannot avoid the conviction that the provision in question is mandatory, and that a failure to observe its mandate in the form of the ballot—a failure made when the character of the issue is not shown between the words indicated in the section quoted—is fatal to the valid issue of the bonds of a municipality.

First.    Is the provision with reference to the form mandatory or directory?    A determination of this inquiry without giving due weight to the general and long-maintained attitude of this court, and never yet, so far as we are now advised, altered to any degree, with respect to the imperativeness of constitutional provisions generally, would be the omission of what appears to us a vitally important consideration.    The first of our decisions to indicate the general attitude of this court is *Tuskaloosa Bridge Co. v. Olmstead,* 41 Ala. 9.    The question decided involved the constitutionality vel non of an act revising or amending a previous enactment, and the clause of the Constitution pertinent was that requiring the revised or amended law or section to be set out at length.    The point was taken that this requirement was directory—merely prescribing a rule of legislative procedure that to violate would not avoid the enactment.    The court held the requirement to be mandatory.    Chief Justice Walker, speaking for the court, said: "The decision in Ohio (*Lehman v. McBride,* 15 Ohio St. 573) is examined in *People v. Lawrence,* 36 Barb. (N. Y.) 177, and we entirely concur with the

opinion in that case that it is not allowable to set aside the obligation of a constitutional provision as directory. There are, it must be conceded, regulations in the Constitution which are merely parliamentary rules, a want of conformity to which would not make a law void.— *People v. Board of Supervisors*, 27 Barb. (N. Y.) 575." We will later refer to both the cases cited from Barbour's Reports. In *Weaver v. Lapsley*, 43 Ala. 224, the *Olmstead Case* is approved, in reasoning and conclusion and followed. In *Ex parte State*, 52 Ala. 231, 23 Am. Rep. 567, the inquiry was whether the constitutional provision, viz., "that suits may be brought against the state in such courts as may by law be provided," was mandatory or directory; and it was ruled that the provision conferred a discretionary power, and was not a mandate —a conclusion largely influenced by a comparison of the provision of the then organic law with that of stronger, more imperative, nature employed in the Constitution of 1819.

In *Perry County v. Railroad Company*, 58 Ala. 556, treating the general subject with which we are concerned, it is said: "We adopt as our own the language of one of the soundest and most thorough thinkers and jurists who have written on the subject of organic law embodied in our Constitutions: 'The courts tread upon dangerous ground when they venture to apply the rules which distinguish directory and mandatory statutes to the provisions of a Constitution. Constitutions do not usually undertake to prescribe mere rules or proceeding, except when such rules are looked upon as essential to the things to be done; and they must then be regarded in the light of limitation upon the power to be exercised. It is the province of an instrument of this solemn and permanent character to establish those fundamental maxims, and to fix those unvarying rules, by which all

the departments of government must at all times shape
their conduct.    *    *    *    We are not, therefore, to ex-
pect to find in a Constitution provisions which the peo-
ple, in adopting it, have not regarded as of high impor-
tance, and worthy to be embraced in our instrument,
which, for a time at least, is to control alike the govern-
ment and the governed, and to form a standard by which
is to be measured the power which can be exercised as
well by the delegate as by the sovereign people them-
selves.   If directions are given respecting the times or
modes of proceeding in which a power should be exercis-
ed, there is at least a strong presumption that the peo-
ple designed it should be exercised in that time and mode
only.'  Cooley, Const. Lim. (7th Ed.) p. 114." We con-
tinue the quotation where that appropriated left off:
"And we impute to the people a want of due apprecia-
tion of the purpose and proper province of such an in-
strument when we infer that such directions are given
to any other end." Immediately following the quota-
tion, which, in sequence, we have extended, the opinion
lays down this rule: "We think the only safe rule for
interpreting clauses of the Constitution which command
certain things to be done, or certain methods to be ob-
served in the enactment of statutes, is to hold that, when
it is affirmatively shown by legal evidence that in the
attempt to legislate some mandate of the Constitution
has been disregarded, such attempt never becomes a law."

   The case of *People v. Lawrence,* 36 Barb. (N. Y.) 177,
is a well-considered adjudication supporting our *Olm-
stead Case* in its broad declaration, qualified only with
respect to regulations of a merely parliamentary nature,
"that it is not allowable to set aside the obligation of a
constitutional provision as directory." Therein it is
said: "I think it will be found, upon full consideration,
to be difficult to treat any constitutional provision as

merely directory and not imperative." And in the course of this opinion the intimation in *People v. Supervisors*, 27 Barb. (N. Y.) 575, that it might become necessary to pronounce certain portions of the Constitution of New York directory merely, as only establishing a rule of legislative practice, is said not to have been "adopted by the court, nor even by the opinion, nor was it indicated as anything more than what might become the dictate of necessity, to relieve the legislature of the state of insuperable embarrassments. It would be law for an extreme case, if it should ever be laid down as law at all."

We can deduce from our own adjudications mentioned and from the authorities on which they are rested no other rule than that provisions of the organic law, defining a particular mode in which a power is to be exercised, must be taken as limitations against and restrictions upon the observance of any other mode than that prescribed in the organic law, and that a mode attempted other than that particularly defined can work nothing but a nullity.

We are cited, as opposing this conclusion, to many decisions of other jurisdictions and also to the expressions of several text-writers, We have examined them all, and find that, with few exceptions, the decisions and texts relate to the construction of statutory, not constitutional, provisions. But, assuming that some of these citations from other courts assert conclusions in necessarily apt opposition to what we have seen has been, at least twice, announced by this tribunal, we discover in them no paramount reason to reverse the stated view in the premises of this court, with due reference to which we feel impelled to conclude the makers of the Constitution constructed that fundamental instrument. To them our cited adjudications bore the information that, unless

otherwise qualified, every provision of the instrument.
except perhaps those relating to mere parliamentary
procedure, though this is not now necessary to be affirm-
ed, prescribing a mode for the exercise of any power,
would be interpreted as limiting the exercise of the pow-
er to that mode only; and if we should now depart from
that rule the action of this court, and not the true in-
tent of the Constitution makers, as should control,
would naturally affect the interpretation of the instru-
ment; for such reversal would entirely eliminate a con-
sideration that existed at the time the instrument was
written, and which the makers thereof have not, in this
instance, negatived in terms or by reason that occurs to
us why this long-maintained attitude of this court in the
construction of our organic laws is not an apt analogy
of the doctrine that the adoption of statute, clause, or
term after known judicial construction thereof operates
to legislatively or constitutionally clothe the enactment,
embracing them, or either of them, with that meaning,
unless negation is written therewith, or is necessarily
impliable from the manner and circumstances of employ-
ment. Additional to this, without needlessly lengthen-
ing this phase of the opinion, the weight of authority
and best-considered cases is opposed to the first stated
insistence of cross-appellants. Cooley, Const. Lim. p.
115; 8 Cyc. p. 762, and notes; *Varney v. Justice*, 86 Ky.
596. 600, 601, 6 S. W. 457.

The only inquiry left under this head of the discus-
sion is whether the provision of section 222 in respect of
the form of the ballot is unequivocal, in the sense that
no discretion in observance is anywhere reposed. The
question suggested is brought the nearer to exactness by
the inquiry: Would an act of the Legislature be con-
stitutional. valid. in this particular, that provided for
a form of ballot, in such cases, different to that present-

22 R

ed by section 222? After expressly inhibiting the issuance of bonds of municipalities, etc., under the authority of a general law, previously therein mentioned, unless authorized by a majority vote by ballot of the qualified voters of the municipality, etc., voting upon the proposition, it is provided: "The ballot used at such election shall contain the words: 'For _____ bond issue,' and 'Against _____ bond issue' (the character of the bond to be shown in the blank space), and the voter shall indicate his choice by placing a cross mark before or after the one or the other." The paramount conditions precedent for the valid issuance of such bonds, declared in the form of an imperative prohibition, is that a majority of the qualified voters of the interested territory, voting on the proposition, shall vote therefor. Not content with this unqualified restriction upon the issuance of such bonds, the writers of the instrument, in emphasis of the purpose to guard such issuance of bonds against improvidences in any form, declare the form of the ballot and the method whereby the voter should express his choice are plainly provided for. In so doing the Constitution makers give the highest evidence of the importance of these two prescriptions. They evidence thereby the conclusion, binding upon all within its sphere, that a general requirement for a majority vote by ballot was not sufficient, but that the two essentials to the ascertainment of the choice of the majority concerned, viz., the ballot to be used and the method of expressing the voter's choice thereon, should be particularly required and prescribed by the instrument itself, thus clearly negativing an intention to repose any discretion anywhere in respect of these two essentials.

But it is suggested that these provisions relate to elections, and that the general policy of the law is to interpret provisions of that character with such laxity as not

to embarrass the major purpose, viz., the ascertainment
of the popular will. This argument is forceful in sup-
port of the view that the provisions under consideration
are imperative, operating as limitations and restric-
tions upon any other method of exercise of the power,
rather than in refutation thereof. Because the makers
of the instrument must have been, when framing these
provisions, conscious of the general policy of the law
in dealing with elections under statutory authority, and,
being so conscious, that they wrote in commanding
terms, prescribing the form of the ballot and the mode
for expressing the voter's choice, is, we think, proof con-
clusive that the intent was to forestall, in elections for
the issuance of such bonds, any possibility of the appli-
cation thereto of the rule that modes, in election statutes,
must yield to the broader policy of an ascertainment
with reasonable certainty of the popular will. If this
is not true, what was the occasion to prescribe at all
the form of the ballot and the method of choice? If we
grant the premise of cross-appellants that the stated
policy of the law is as stated, we must assume that the
Constitution makers knew that policy, and, if so, and
if applied here, the result would be to impute to them
the folly of having written in the organic law, solemn
and permanent and important as it is, wholly useless
provisions; for the reason that the whole purpose would,
upon that theory, have been fulfilled by the requirement
only of a majority vote by ballot. In short the argument,
predicated upon the general policy of the law with re-
spect to elections, impressed, we think, the makers of
the instrument with the vital (to them) importance and
necessity to safeguard this power of issuing bonds to
the limit of wisely provided detail. Now what is the
form of the ballot prescribed?

[Coleman, et al. v. Town of Eutaw, et al. and Town of Eutaw, et al.
v. Coleman, et al.]

Much of the argument is specially devoted to this inquiry. It is urged that the parenthetical statement, viz., "the chaiacter of the bond to be shown in the blank space," does not import a requirement that the character of the bond shall be shown in the space indicated by the dotted lines; further, that the space mentioned does not necessarily refer only to those lines. It is true the singular of "space" is used, whereas there are two spaces indicated by the dotted lines. This is entirely an unimportant matter, if, as we shall later consider, the provision has reference only to those spaces by the dotted lines; for the reason that the mere failure to supply the plural instead of the singular could not serve to defeat the clearly expressed intent to refer to the two spaces indicated by the two dotted lines. Nor do we think that the imperativeness vel non of the entire provision for from of ballot, subject to the argued influence, in interpretation, of the words "to be" appearing in the parenthetical expression; for the reason that that expression cannot be read otherwise than as having reference to space previously indicated, and is, hence, in no sense an independent statement. It is explanatory.

The imperative "shall" is the marrow of the intent in this connection. It would be unreasonable in the extreme to say, and it cannot be that the intent was, by the employment of that imperative, to require only the presence of the stated words on the ballot, and to thereby wholly ignore any effect to the spaces indicated and to the parenthetical explanatory expression. If so, it is obvious that a part of the provision would be erased from the instrument. If the dotted spaces had been left without explanation of their purpose, of course, it might be well said that, since their purpose is not stated, we cannot supply one. But the explanation is expressly afforded, and that explanation is colored in imperative-

ness by the use of indication spaces, by the command stated, viz., that the ballot shall contain the words designated and between certain of them the character of the bond shall be stated; in other words, the idea intended to be expressed, and it is so expressed, that the ballot shall contain the designated words and between those indicated the character of the bonds shall be shown. This is demonstrated conclusively, we think, by the provision that "the voter shall indicate his choice by placing a cross mark before or after the one or the other." What "one or the other?" Manifestly, "before or after one or the other" of two propositions submitted to his choice. How are they to be submitted—shown on the ballot—in order to be propositions subject to the mechanically expressed memorial of his choice? The answer can only be, stating, in sequence on the ballot, the alternatives, for or against a designated bond issue. The cross mark was intended to give an affirmative or negative response to two propositions; and the submission thereof to the voter is the only feasible and safe method, namely, simply state them, each in a separate clause, on the ballot. By pursuing that course, and no other can be reasonably read from section 222, the question submitted, and the choice there between by the voter, become one clause on the paper and announce with perfect exactness his vote in the premises. The section refers only to those spaces indicated by the dotted lines. Where is the warrant, in the section, to place the description of the bond elsewhere? If the provision requiring the character of the bond to be shown in those spaces is disregarded, where is any provision requiring the character of the bond to be anywhere shown on the ballot? Why show its character at all? If it is not requisite to do so, the ceremony is useless, vain, for the obvious reason that it is not a compliance at all. So far

as the constitutional mandate is concerned, it might just as well have been entirely omitted as placed where it was. The prohibition is that unless the ballot is in the form prescribed no valid bond can issue in such cases. The inhibition was not met, and the bonds of Eutaw cannot, therefore, issue for either of the three purposes contemplated.

There is no merit in the insistence of original appellants that the submission, at one time, at one place, and, we may add, in an election held by one set of officers, of three separate propositions, three separate ballots being afforded for the separate expression of each voter of his choice on each of the three propositions, and a separate ascertainment of the result, would invalidate the issue or issues of proposed bonds.—*Maybin v. City of Biloxi,* 77 Miss. 673, 28 South. 566. Such a submission not only met the conditions in that regard, raised by the Constitution and the act, but afforded the voter an opportunity to express, if he so desired, his preference, upon relative public necessity, as between the creating of a debt for one or two of the three purposes to effectuate which the issues of bonds were proposed. All three of the propositions were sanctioned by a majority of the voters, though by varying numbers, thus indicating that some regarded, and so voted, the public necessity of the proposed action by the municipality to be stronger and more desirable in one instance than in the other or others. That character of submission could not affect to cloud the issue presented to the voter's choice. It was an appropriate exercise of the discretion reposed in the council. The Constitution does not assume, in the particular presently important, to provide for the purposes to which the proceeds of bond issues shall be devoted. It provides a general prohibition against the issue of bonds, aside from the exceptions set forth in section 222,

without compliance with the conditions precedent—lim-
itations—prescribed in that section, leaving the Legis-
lature otherwise unrestricted in the premises. The act
approved February 25, 1903, defines the purposes for
which municipalities may issue bonds, and the governing
bodies thereof are authorized to order elections to take
the sense of the voters concerned in accordance with the
constitutional requirements.

One of the propositions submitted to the voters was
the issuance vel non of bonds of the municipality for
the purpose  of purchasing waterworks and electric
light plant." It is urged for appellants that such prop-
osition involved the summission of a double purpose.
If it is assumed that the act, under fair construction,
intends that the question submitted to the voters shall
not be the result of a blending of any two or more in-
congruous purposes authorized by the act to warrant
the issue of bonds, we do not think the proposition sub-
mitted, as stated, offensive to the provisions of the act
in any particular. Doubtless, though it is unnecessary
to now affirm it, the blending into one proposition, look-
ing to a ballot of the authorized purpose of building
bridges and school houses, suggesting an unseparated
sum for both objects would involve an incongruous asso-
ciation of purposes. But where the purpose evolved in
the blending is the product of two of the purposes
enumerated in the act for which bonds may be issued,
and they might naturally and reasonably be deemed or
made a part of one of a more general scheme, we are of
the opinion that the act does not inhibit the exercise by
the governing body of a discretion to blend into one prop-
osition for submission to the voters such enumerated
purposes; for instance, we merely suggest, the building
of bridges and constructing streets. They, very natur-
ally and reasonably, might compose one scheme or pur-

pose for municipal improvement. It is likewise, we think, with respect to a water and light plant. We cannot be ignorant of the fact that both these public utilities are usually given effective existence by the use of steam engines, nor can we ignore the further fact that one steam plant can and does often afford the requisite power to operate each of these utilities. If so, the fact that entirely different means for the transmission of water and of electricity are employed cannot avail to remove from practical consideration the vital agency— power— common to their efficiency. Of course, if appellant's contention were sanctioned here, there could be no initiative of a combined water and light plant in a municipality without either; and the result would be that the voter would be denied the opportunity to vote upon, and the governing body to submit, a proposition the practical and economical accomplishment of which might, naturally and reasonably, depend upon the conjoint installation and operation of a plant deriving motive power from a common mechanism. True, a voter might desire to approve by his ballot the construction or purchase of a water plant, but be opposed to the construction of a light plant. His remedy must be to vote against the whole proposition, rather than that the law should be rendered practically abortive by an effort to conform it to his particular views.

In briefs of solicitors for cross-appellants may be found several well-considered adjudications of other jurisdictions supporting the views expressed before; and solicitors for appellants present in their briefs decisions from other jurisdictions opposed thereto. We see no occasion to enter on a discussion pro or con of them. The reasoning given before compels, we think, the conclusive announced. Appellants urge that the case of *Woodlawn v. Cain*, 135 Ala. 371, 33 South. 151, should

be accorded influence in determining this contention. That case involved the submission to the voters of Woodlawn for their determination "two separate and distinct and unconnected purposes, one to pay interest on $25,-000 of new 5 per cent. bonds with which it proposed to compromise and settle an old debt of $32,000 bearing 8 per cent. interest, the other to make and maintain public improvements." The inapplicability of this case to the inquiry at bar is apparent.

The constitutional mandate in respect of form of the ballot, in each of the three instances, not having been performed, the demurrer assailing that phase of the bill should have been overruled. The decree below sustaining that demurrer will be reversed, and one will be here entered overruling the same. Necessarily the bill has equity, and the decree overruling the motion, assigned as error by cross-appellants, will be affirmed.

Affirmed in part, reversed and rendered in part, and remanded.

TYSON, C. J., and DOWDELL and ANDERSON, JJ., concur.