2 So.2d 310

### WHARTON, President of Jefferson County Commission, et al. v. KNIGHT.

**6 Div. 857.**

Supreme Court of Alabama.

May 15, 1941.

W. Bruce White and Smyer, Smyer & Bainbridge, all of Birmingham, for appellee.

BOULDIN, Justice.

Appellee filed a taxpayer's bill to enjoin the members of the County Commission, the governing body of the county, from incurring an alleged indebtedness on behalf of the county, in violation of § 224 of the Constitution of Alabama. It is alleged the county has an existing indebtedness to the limit prescribed by this section.

The appeal is from a decree overruling demurrers to the bill.

"No county shall become indebted in an amount including present indebtedness, greater than three and one-half per centum of the assessed value of the property therein." So reads Section 224 of the Constitution of 1901.

This section, its background, purpose, and meaning clearly expressed, has so often been considered that we content ourselves with a statement of the settled law applicable to the case in hand. The prohibition is against becoming indebted. It takes no note of the purpose for which the indebtedness is incurred. It makes no provision for capital outlays, such as building a court house, essential to the proper functioning of a county government, to be paid for by those who enjoy the benefit of such outlay from year to year.

Mullins & Deramus, of Birmingham, for appellants.

A county which is indebted to the limit must adopt a pay as you go plan.

Such plan contemplates payment of obligations from current funds. As a workable basis, current funds are ,funds accruing and to become available during the current fiscal year. Such county may incur any obligation authorized by law within the limits of the funds constructively available during the current fiscal year, and payable solely from such funds.

■ But any contractual obligation incurred in excess of such current revenue is inhibited; and any obligation incurred during a given fiscal year, and payable by its terms from revenues derived from taxation in a future fiscal year, burdening such future revenues with the payment of obligations presently incurred, is inhibited and void.

■ To recognize certain distinctions, we observe that a debt is an obligation to pay, resulting from a law imposed duty, or from contract, express or implied, authorized by law.

So, self-liquidating projects, such as public utilities acquired by cities wherein the stipulated outlays are payable solely from operative income, and not corporate obligations involving the faith and credit of the county or city, are not within the inhibition of the debt limit provisions of our constitution.

■ So, also, obligations payable solely from the proceeds of privilege taxes, duly levied and pledged thereunto, not to become a burden on the general taxpayer, are not inhibited.

■ Some county obligations are imposed by law, among them necessary outlays for which the law requires funds set aside from year to year; others, probably quite as essential, are imposed by law, without provision for setting apart a special fund therefor. Administrative authorities are under the duty to regard these as preferred charges on current revenues. In incurring obligations, for purposes left to their discretion as to amount of outlays they are under duty, in case the county has reached its debt limit, to restrict the obligations thus incurred to current funds, after paying charges essential to the functioning of a county government.

■ Section 224 of the Constitution has been said not to apply to current obligations essential to the operation of government. Jefferson County v. State ex rel. Carmichael, 233 Ala. 148, 170 So. 70. This case dealt with an excise tax imposed on coun-

ties; a tax accruing each year by force of law, just as many other essential charges accrue, and are payable from the current funds of the fiscal year in which they become payable, as preferred charges. State Tax Commission v. County Board of Education of Jefferson County, 235 Ala. 388, 179 So. 197; County Board of Education of Jefferson County v. State ex rel. Carmichael, Atty. Gen., 237 Ala. 434, 187 So. 414.

■■ Neither that case, nor the case of Brown, Treasurer, v. Gay-Padgett Hardware Co., 188 Ala. 423, 66 So. 161, hold fixed charges are not figured in the constitutional debt limitation. Section 224 is a limitation on legislative power, as well·as that of county governing bodies. The Legislature is without power to impose current involuntary obligations on counties indebted to the limit, in excess of the current revenues they may raise under the law. Such a condition has not arisen, and presumably a Legislature acting within its constitutional powers, will not impose such burdens. Hall v. Blan, State Treasurer, 227 Ala. 64, 72, 73, 148 So. 601.

■ For like, if not stronger, reasons the Legislature can not by mandatory statute authorize any county indebted to the limit, to incur obligations payable from the revenue of future years, however important it may be to provide facilities greatly needed in performing its government activities.

All obligations presently contracted for facilities presently delivered, to be paid for in whole or in part from the revenues of a later fiscal year or years, are, as to further payments, debts, inhibited by Section 224. Gunter et al. v. Hackworth et al., 182 Ala. 205, 62 So. 101; Hagan v. Commissioner's Court of Limestone County, et al., 160 Ala. 544, 49 So. 417, 37 L.R.A.,N.S., 1027; Brown v. Gay-Padgett Hardware Co., supra; Moody, Probate Judge, et al. v. Gunter et al., 203 Ala. 655, 84 So. 831; Southern Railway Company v. Jackson County, 189 Ala. 436, 66 So. 570; Skinner's Ala. Constitution, notes to § 224 and § 225.

■ In the instant case, the people of the county, by referendum, voted for the use of voting machines at elections, under the Voting Machine Statute, Acts 1939, p. 443, Code 1940, Tit. 17, §§ 91–119. Pursuant to such mandate, the County Commission, the county being indebted to the constitutional limit, undertook to devise plans to install voting machines throughout the county. To that end, they invited and obtained bids for some 100 to 180 machines, of

different patterns. Some of these bids were on a lease basis for use in elections during 1941 and the general election of 1942 with option to purchase; still others for sale of the machines on an instalment basis running for ten years. All of these, however, look to the incurring of a monied obligation in the fiscal year, October 1, 1940, to September 30, 1941, to be paid out of funds for two or more fiscal years.

However regrettable this may be, we agree with the trial court in holding such transaction would create debt, inhibited by Section 224.

The lawmakers, anticipating this difficulty, provided in Section 4(e) Acts 1939, p. 447, Code 1940, Tit. 17, § 94, that if the county, because of constitutional debt limit, was unable to obtain by lease or purchase, voting machines for the entire county, they could be obtained in part from time to time as the financial condition of the county should warrant. All will agree that holding elections is a vital function of democratic government. By the ballot the will of a democracy is given expression.

The method of holding elections, and the unit of government to bear the expenses thereof is a matter of legislation.

While the people of Jefferson County have recorded their view that voting machines will better safeguard their elections, they have not been left without election laws operative until voting machines may be installed.

The debt limit provisions of the constitution, ratified by the whole state, must be upheld as the supreme law.

Affirmed.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.