20 So.2d 36

### TAXPAYERS AND CITIZENS OF SHELBY COUNTY v. SHELBY COUNTY et al.
### 7 Div. 816.

Supreme Court of Alabama.

Dec. 7, 1944.

A. L. Hardegree, Circuit Solicitor, of Ashland, and Paul 'O. Luck, Deputy Solicitor, of Columbiana, for appellants.

Wm. N. McQueen, Acting Atty. Gen., and Chas. M. Cooper, Asst. Atty. Gen., amici curiæ.

L. H. Ellis, of Columbiana, and Wm. Alfred Rose, Bradley, Baldwin, All & White, and Ellene Winn, all of Birmingham, for appellees.

GARDNER, Chief Justice.

The County of Shelby had outstanding bonded indebtedness in the amount of $375,-000, bearing interest at the rate of 5½% per annum, upon which issue the sum of $67,000 in the. principal amount thereof has been paid and retired, leaving an outstanding bonded indebtedness of $308,000. These bonds are not callable, and are not due until June, 1953. At the maturity date of these outstanding bonds the county will have funds available to retire as much as $128,000 principal amount thereof, leaving $180,000 principal amount, for the payment of which no provision has been made. This proceeding relates to the new bond issue proposed by the county to provide for the $180,000, and is to bear the lower interest rate of 1 and ¾% per annum.

Accordingly, the Board of Revenue of Shelby County proceeded to the issuance and sale of these funding bonds, pursuant to statutory authority as found in Sec. 253 et seq., Title 37, Code 1940, and Sec. 104, Title 12, Code 1940. After due advertisement and the correct entry of all orders and resolutions provided by statute in such cases, the Board of Revenue proceeded to sell at public auction to the highest bidder the new issue of $180,000 bonds, to bear the rate of interest at 1 and 3/4% per annum. They were accordingly sold at a price equal to 103.37% of par value plus accrued interest—the highest, best, and last bid made therefor. This sale was duly confirmed by proper resolution of the Board. It may be added that the new bonds are callable in whole or in part at par and accrued interest on any interest payment date on or after July 1, 1953.

In the resolution of the Board of Revenue, in proposing the issuance of this $180,-000 refunding bonds, it was expressly provided that the proceeds derived from the sale thereof shall be forthwith invested by the county in the purchase of $180,000 principal amount of U. S. Treasury bonds, bearing interest at a rate not less than 2% per annum, payable semi-annually, to be of such series, date, and maturity, not earlier than 1952 or later than 1955, as the Board might fix, and thus eliminating any question as to market value fluctuations. It was further provided in such resolution that these U. S. Treasury bonds shall at once be deposited by the county for safekeeping with the First National Bank of Montgomery at Montgomery, Alabama, under an escrow agreement between the county and said Bank, whereunder such Treasury bonds shall be held by said Bank, and the income derived therefrom be remitted by it solely for the payment of interest as the same shall mature on the new bonds, and the principal proceeds derived from the payment of such Treasury bonds shall be remitted by said Bank solely for the payment of the principal of the old bonds at their maturity, with any excess interest received from the Treasury bonds to be applied toward payment of the principal or interest on the old bonds at the maturity thereof.

Before consummating the plan thus outlined, the Board of Revenue of Shelby County took the precaution to proceed under Article 13, Title 7, Code 1940, for submission by petition to the circuit court for approval of the plan thus outlined. After due notice to the citizens and taxpayers of the county and to the Solicitor and the Deputy Solicitor, as provided in Sec. 171, Title 7, Code 1940, with answer filed and testimony taken, an order was entered validating the new bond issue of $180,000 and approving the plan as set up in the resolution of the Board of Revenue. It may be added that the proof offered upon the hearing showed beyond question there was no collusion or fraud in any of the proceedings of the Board or in any of the steps taken, and that the Board acted in perfect good faith in authorizing the proposed refunding bonds. It further appeared from the testimony of men experienced in matters of finance that this refunding plan adopted by the Board presented a most favorable opportunity for the refinancing of the indebtedness of the county at a low rate of interest, and that it exhibited excellent business judgment. The court found that the application of the proceeds derived from the sale of the proposed bonds in the manner provided in the resolution of the Board of Revenue would

not create a new debt of the county within the meaning of Sec. 224 of the Constitution, and the county's constitutional debt limit will, therefore, not be exceeded. It is to be noted, also, that in the decree the validation and confirmation of the proposed bond issue is rested upon the investment of the proceeds thereof in U. S. bonds, as set forth in the resolution of the Board, and the deposit of said bonds with the Bank, as outlined in the Board's resolution. After a statement of a finding of the facts and the conclusions of law therefrom, the court entered the following decree:

"It is, therefore, upon consideration by the court, ordered, adjudged and decreed by the court as follows:

"(1) The proceedings heretofore had or taken in connection with the authorization and sale by the county of the proposed bonds, and all covenants and agreements on the part of the county (other than the pledge made of said special annual ad valorem tax of one-fourth of one per centum) contained in said resolution of the board adopted on September 19, 1944, are hereby validated and confirmed. When the proposed bonds shall have been executed and sealed in the manner provided in said resolution, and shall have been delivered to and paid for by the purchaser thereof pursuant to the sale thereof, and not less than $180,-000 of the principal proceeds received therefrom shall have been invested in the United States bonds, and the county shall have entered into the escrow agreement and deposited the United States bonds thereunder, all as is contemplated in said resolution, then the proposed bonds and said escrow agreement will thereupon stand validated and confirmed.

"(2) Upon the issuance of the proposed bonds in the manner provided in said resolution of the board adopted on September 19, 1944, the president of the board hereby is directed to cause to be stamped, printed or written on the proposed bonds a legend substantially as follows:

" 'Validated and confirmed by decree of the Circuit Court for Shelby County, Alabama, in Equity, rendered on the 28th day of October, 1944.'

"The Register of this court is directed thereupon to sign such legend in her capacity as such register.

"(3) The costs in this cause are hereby taxed against the county.

"Done and Entered at Columbiana, Alabama, this 28th day of October, 1944.
"W. W. Wallace,
"Judge of the Circuit Court,
"In Equity Sitting."

From such order this appeal is prosecuted in pursuance of the express provisions of Sec. 173, Title 7, Code 1940.

All the orders and resolutions of the Board of Revenue of Shelby County appear to be in strict accord with the statutory provisions therefor, and as a consequence this appeal only presents the single question as to whether or not the issuance of these refunding bonds would cause the County to exceed the debt limit, as prescribed by Sec. 224, Constitution 1901. The petition, with the exhibits thereto, disclosed that the constitutional debt limit of Shelby County would be exceeded unless, in computing the indebtedness, the proceeds of the $180,000 new issue be credited thereon.

Counsel for defendants lay stress upon the cases of District of Doon Township v. Cummins, 142 U.S. 366, 12 S.Ct. 220, 35 L. Ed. 1044, and Murphy v. Spokane, 64 Wash. 681, 117 P. 476, which have been interpreted as holding to the view that a sale of refunding bonds for the purpose of using their proceeds for the retirement of outstanding obligations, as opposed to the direct exchange of such bonds, gives rise to a new indebtedness within the inhibition of a constitutional debt limitation.

We have read these cases with care and much interest, but we find that the holding of these authorities is out of line with the majority view, as expressed by numerous cases throughout the country. These authorities are found set out in the note to State of Florida v. Citrus County, 116 Fla. 676, 157 So. 4, 97 A.L.R. p. 431, beginning on p. 442. Some few of those more directly in point are: Veatch v. Moscow, 18 Idaho 313, 109 P. 722, 21 Ann.Cas. 1332; Banta v. Clarke County, 219 Iowa 1195, 260 N. W. 329; Citrus Growers' Development Ass'n v. Salt River Valley Ass'n, 34 Ariz. 105, 268 P. 773; National Life Ins. Co. v. Mead, 13 S.D. 37, 82 N.W. 78, 48 L.R.A. 785, 79 Am.St.Rep. 876; City of Poughkeepsie v. Quintard, 136 N.Y. 275, 32 N.E. 764; Opinion of Justices, 81 Mo. 602, 18 A. 291; Robertson v. Tillman, 39 S.C. 298, 17 S.E. 678; Marden v. Elks Club, 138 Fla. 707, 190 So. 40; City of Los Angeles v. Teed, 112 Cal. 319, 44 P. 580; Powell v. City of Madison, 107 Ind. 106, 8 N.E. 31; Lawrence County v. Jewell, 8 Cir., 100 F.

905; City of Huron v. Second Ward Sav. Bank, 8 Cir., 86 F. 272; Kelly v. Central Hanover Bank & Trust Co., D. C., 11 F. Supp. 497.

And, indeed, our statute authorizes a sale of refunding bonds rather than a mere exchange. See Chapter 6, Title 37, Code 1940.

Our study of the authorities substantiates the view as expressed by the author of the above annotation, wherein it is said: "It will be noted that the weight of authority supports the doctrine that the issuance of bonds for the purpose of funding a valid debt does not create a new indebtedness, although they are sold and their proceeds devoted to the discharge of the outstanding debt, rather than exchanged for the evidences of such debt. * * * There would seem to be no substantial ground for a distinction between a sale and an exchange, where the proceeds of the sale are actually used for the retirement of outstanding obligations."

After all, it is a practical proposition, and the constitutional limitation should be viewed from a common-sense standpoint. In giving effect to Sec. 224 the Court should bear in mind the purpose of its enactment into our organic law. As observed in Town of Camden v. Fairbanks, Morse & Co., 204 Ala. 112, 86 So. 8, like constitutional restrictions are not to be interpreted alone by the words abstractly considered, but by the language used read in the light of the conditions and necessities in which the provisions originated and in view of the purposes sought to be obtained and secured. Restrictions like those contained in Sec. 224 of our Constitution were for the purpose of providing a safeguard against extravagant or unwise expenditure of public funds. Clearly enough, the evil was one of great seriousness, and the debt limit provision was designed primarily to remedy this evil by establishing safeguards against their recurrence.

As observed in 38 Am.Jur. p. 99: "The clear and unmistakable purpose of such provision is effectually to protect persons residing in municipalities from the abuse of their credit and the consequent oppression of burdensome, if not ruinous, taxation."

We think an examination of the decisions discloses a determined effort on the part of the courts to enforce rigorously such constitutional provisions, and in such a manner as to obtain the stated object.

Or, as otherwise stated, and as found in 38 Am.Jur. p. 107: "Attempted evasions of constitutional provisions as to debt limit are viewed with disfavor by the courts."

In considering the question, therefore, here presented care must be taken that no precedent be established which would lead to any method by which such restrictions could be circumvented.

With these general observations we may proceed briefly to consider whether or not the specific plan outlined by the Board of Revenue of Shelby County, and confirmed by the court below, in any manner contravenes the restrictions of Sec. 224 of our Constitution. While the courts must be careful to see that there be a strict observance of this constitutional debt limitation, yet it should be remembered that a limitation of indebtedness is aimed at an actual rather than a theoretical indebtedness. 44 C.J. p. 1123. The court should look to substance rather than mere form. Speaking from a strict technical standpoint, the new bond issue of $180,000, which cannot presently be applied to the payment of the outstanding bonded debt of $308,000 because the outstanding bonds are not callable, does create a debt beyond the constitutional limitation as fixed by Sec. 224. But we are persuaded that in substance and effect the outlined plan by which the U. S. bonds are placed with a trustee, the First National Bank of Montgomery, to be applied in the discharge of the old bond issue, should be considered as a credit thereon; and so considered the debt limit of the county is not increased.

The Board of Revenue of Shelby County was confronted with the unfortunate fact that the outstanding bonds were not callable. But the opportunity was presented for a refinancing of the indebtedness of the county at an exceedingly low rate of interest by the issuance of callable bonds, and of course, greatly to the county's advantage. In Re Opinion of the Justices, 244 Ala. 456, 13 So.2d 559, 561, the inquiry propounded to the members of the Court concerned the question of investment of surplus funds from the income tax which were pledged by the constitutional provision to a certain purpose. We recognized that such a fund could not be diverted from the designated source, and that it was in effect a trust fund. While the response recognized that such funds could only be applied to the stated obligations and purposes declared in the Constitution, yet it

was observed that it is not important that the method of doing so shall be by any standard formula if the purpose declared in the Constitution is carried into effect. The conclusion was therefore reached that an investment of these funds in bonds of the United States was safe and a proper investment, and did not violate any provision of the Constitution as to their ultimate use. Speaking of United States bonds, it was further said: "The faith and credit of the United States is the foundation of all money values within its territory. If that is discredited, we have no financial security of any sort."

The Board of Revenue has pursued this course. The money is to be invested in U. S. bonds, uniformly regarded as a perfectly safe and proper investment. These are 2% bonds, and bear interest in excess of the interest rate of the new bond issue of the county. These bonds are held in trust and can be used only for one purpose—the payment of the obligations of the outstanding bonds as they mature. There is no method by which they could be diverted, nor the proposed plan circumvented. They represent the faith and credit of the United States, the foundation of all money values of this country. From a practical standpoint, therefore, looking through form to substance, we think these bonds held in escrow by the First National Bank of Montgomery are properly to be considered and deducted from the outstanding obligations to which they are to be applied as they mature. And so considered, the debt limit of the county is not exceeded.

A similar question was presented to the Supreme Court of Arizona in Citrus Growers' Ass'n v. Salt River Valley Ass'n, 34 Ariz. 105, 268 P. 773, 781, wherein the Court observed: "We are of the opinion that on principle the amount deposited in the trust fund as aforesaid should be considered as in effect reducing the indebtedness of the association on the bond issue of 1927 by the amount so deposited, and, if such be true, the bond issue of 1928 and the assessments levied to secure its payment do not violate the terms of the Horse Mesa Trust Indenture."

This principle seems to have been recognized in computing municipal indebtedness, as found in the authorities cited in 44 C.J. p. 1123, and indeed appears to have likewise been given application by this Court in Town of Camden v. Fairbanks, Morse & Co., 204 Ala. 112, 86 So. 8, considered on second appeal in Town of Camden v. Fairbanks, Morse & Co., 206 Ala. 293, 89 So. 456. The case of Doody v. State ex rel. Mobile County, 233 Ala. 287, 171 So. 504, cannot be said to be here directly applicable, for the reason that the Court was there considering the question of debt limitation viewed in the light of the language of the constitutional amendment passed especially for Mobile County, and the evident purpose thereof.

Upon the question of the time of the issuance of bonds, this Court in Stokes v. City of Montgomery, 203 Ala. 307, 82 So. 663, declared that both the time of the sale and the issuance thereof were matters left to the sound discretion of the city officials, there being no time limit specified for the exercise of the power with which they were vested. It cannot be questioned that the Board of Revenue of Shelby County has exercised sound discretion in providing for the issuance of these new bonds at this time, as disclosed by the facts set forth in this record, and the unusual financial status as to the low rate of interest now prevailing for such securities. And we feel fully justified in reaching the conclusion that the U.S. bonds on deposit for the express purpose of their application to the old bond debt is properly to be considered as a credit thereon at this time.

In substance and effect and from a practical standpoint, so far as Sec. 224 of our Constitution is concerned, it seems clear that such payment may now be considered as made, and the outstanding indebtedness thus reduced so far as the debt limit inhibition of the Constitution is concerned.

Upon consideration of this cause by the Court in consultation, the conclusion was reached that the U. S. bonds purchased and placed in escrow should be earmarked as a trust fund, and to that end should be registered in the name of the Bank as trustee for the county. Accordingly, the decree rendered will be here modified so as to require such registration.

The decree will, therefore, be here modified in the respect indicated, and as thus modified will be affirmed.

Modified and affirmed.

All the Justices concur, except BROWN, J., who is of the opinion the debt limit is exceeded, and respectfully dissents.