93 So.2d 493

**TAXPAYERS AND CITIZENS OF THE TOWN OF GEORGIANA**

v.

**TOWN OF GEORGIANA et al.**

3 Div. 768.

Supreme Court of Alabama.

Dec. 13, 1956.

Rehearing Denied March 14, 1957.

C. J. Kettler, Circuit Sol., Luverne, and Paul D. Hartley, County Sol., Greenville, for appellants.

White, Bradley, Arant, All & Rose, Wm. Alfred Rose and Jos. H. Johnson, Jr., Birmingham, for appellees.

GOODWYN, Justice.

This is an appeal by the taxpayers and citizens of the town of Georgiana from a final decree of the circuit court of Butler County, in equity, validating certain warrants proposed to be issued by the town. The proceeding to validate was brought by the town and its governing body under the provisions of Code 1940, Tit. 7, §§ 169–176.

On March 19, 1956, the town, purporting to act under the authority of § 466, Tit. 37, Code 1940, adopted an ordinance authorizing the issuance and sale of $70,-000 principal amount of its Hospital Special Tax Anticipation Warrants, payable serially from 1957 through 1971, for the purpose of obtaining funds with which to construct a public hospital in the town. To provide for payment of the warrants, both principal and interest, the town also adopted on March 19, 1956, an ordinance levying a "privilege and license tax", measured by gross sales or gross receipts, against all persons, firms and corporations engaged in the business of selling tangible personal property at retail within the corporate limits of the town, subject to certain enumerated exemptions. This tax is "in addition to all other taxes of every kind now imposed by law." The entire proceeds of the tax are "irrevocably pledged for payment of the principal of and the interest on the warrants * * * subject of course to the law imposed requirement that, if neces-

sary, out of the revenue accruing from the gross receipts tax, the essential and legitimate governmental expenses of operating the town must first be paid." The principal of and interest on the warrants are made payable solely from the proceeds of the gross receipts tax and are not secured by the general faith and credit of the town, it being expressly provided that "they shall not constitute general obligations of the town." It is agreed by the parties that if the proposed warrants constitute an indebtedness of the town within the meaning of § 225, Constitution 1901, the town will, by the issuance of such warrants, exceed its debt limit as prescribed by said section.

■ The determinative question presented is whether the town will "become indebted", within the meaning of § 225, supra, by the issuance of the proposed warrants. We do not find where it has been previously determined whether or not obligations payable solely from the proceeds of a municipal license tax, such as the gross receipts tax here involved, and issued pursuant to an ordinance containing provisions similar to those in the instant case, are chargeable against a town's constitutional debt limit.

Appellants take the position that municipal obligations secured by a pledge of revenues, including license taxes, which are available, or which may be made available, at the time of such pledge for general municipal purposes are chargeable against the debt limit. On the other hand it is the town's position that the warrants, being payable solely from the special gross receipts tax, and the full faith and credit of the town not being pledged to their payment, the town does not become "indebted" by the issuance thereof, within the meaning of § 225; and that this is particularly so in view of the provision in the warrant ordinance that the pledge of revenue from the license tax is subject to the law imposed requirement that, if necessary, out of such revenue "the essential and legitimate governmental expenses of operating the town must first be paid."

Section 225, Constitution 1901, provides, in pertinent part, as follows:

"No city, town, or other municipal corporation having a population of less than six thousand, except as hereafter provided, *shall become indebted* in an amount including present indebtedness, exceeding five per centum of the assessed value of the property therein, except for the construction of or purchase of water works, gas, or electric lighting plants, or sewerage, or for the improvement of streets, for which purposes an additional indebtedness not exceeding three per centum may be created; provided, this limitation shall not affect any debt now authorized by law to be created, nor any temporary loans to be paid within one year, made in anticipation of the collection of taxes, not exceeding one-fourth of the annual revenues of such city or town. * * *." [Emphasis supplied.]

Section 224, Constitution 1901, provides, in part, as follows:

"No county *shall become indebted* in an amount including present indebtedness, greater than three and one-half per centum of the assessed value of the property therein; * * *." [Emphasis supplied.]

It has been said that the purposes of these sections are to curb the improvident creation of debts by cities and counties, thereby protecting the taxpayers against excessive and unnecessary burdens, and to secure the credit of cities and counties to the end that they may borrow money, within the limits prescribed, on advantageous terms. Hagan v. Commissioner's Court of Limestone County, 160 Ala. 544, 551, 49 So. 417, 37 L.R.A.,N.S., 1027; Gunter v. Hackworth, 182 Ala. 205, 209–210, 62 So. 101; Norton v. Lusk, 248 Ala. 110, 117, 26 So.2d 849, 854. From the last cited case is the following:

"The Constitution has also made a limitation on the amount of indebted-

ness which a county (§ 224) or a city (§ 225) may create.

"This has been construed to apply not only to an obligation to which the county or city pledges its full faith and credit, called a general obligation, but also when the county or city pledges existing property or revenue from existing sources to be derived in the future. The rationale of these decisions is that such an arrangement would freeze funds or property already acquired, actually or potentially, and if a county or city could thus freeze a portion of its income, it might by different transactions freeze it all, and cripple its power to function as a governmental institution to the detriment of taxpayers. In re Opinions of the Justices, 226 Ala. 570, 148 So. 111; Town of Opp v. Donaldson, 230 Ala. 689, 163 So. 332; Oppenheim v. City of Florence, 229 Ala. 50, 155 So. 859; Fuller v. City of Cullman, 240 Ala. 309, 199 So. 2; Chamberlain v. Board of Commissioners of City of Mobile, 243 Ala. 662, 11 So.2d 724; Wharton v. Knight, 241 Ala. 218, 2 So.2d 310; Patterson v. Jefferson County, 238 Ala. 442, 191 So. 681. The full faith and credit of the county or city is not thereby pledged, but a part of it is pledged.

"Under these authorities and others, however, the county or city does not pledge its faith or credit when the indebtedness incurred to purchase or develop new property or facilities is made repayable solely out of the income to be derived from such property or facilities. We have said that such an obligation by a county or city does not create a debt within the meaning of §§ 224 or 225. Those provisions of the Constitution were intended to limit the burden imposed upon taxpayers by new obligations, and to stabilize the economic position of the institution."

Although § 225, according to its terms, is a limitation on the power to contract indebtedness and not on the power to tax,
it is nevertheless well-settled that its underlying purpose is to serve as a limit to taxation or, stated otherwise, as a protection to the taxpayer. Any obligation assumed by the city, which directly or indirectly increases the burden of taxation, is a debt in the constitutional sense. Hagan v. Commissioner's Court of Limestone County, supra; Norton v. Lusk, supra. In the recent case of Rollings v. Marshall County, 263 Ala. 317, 321, 82 So.2d 428, 431, it was said:

"This Court held in Hagan v. Commissioner's Court of Limestone County, 160 Ala. 544, 49 So. 417, 37 L.R.A., N.S., 1027, that the levy of a special tax under the second proviso of section 215, supra, as authorized by section 186, Title 12, Code, and the issuance of warrants payable out of such revenue in future years for the purposes there specified, constitute a debt within the meaning of sections 215 and 224, supra. So that a county which has reached its debt limit under section 224 cannot avail of the second proviso of section 215. Southern Ry. Co. v. Jackson County, supra [189 Ala. 436, 66 So. 570]; Littlejohn v. Littlejohn, supra [195 Ala. 614, 71 So. 448].

"We think it advisable to observe that this conclusion does not conflict with In re Opinion of the Justices, 230 Ala. 673, 163 So. 105; Isbell v. Shelby County, 235 Ala. 571, 180 So. 567; Lyon v. Shelby County, 235 Ala. 69, 177 So. 306. In those cases the question related to the portion of a state tax which was allocated by law to the counties. That did not in any respect tap a resource of revenue of the counties existing or potential, but it was merely a donation of state funds and, therefore, it was not influenced by the principle here given effect.

"The result is that the proposal set out in the instant proceeding as it applies to section 215 of the Constitution is authorized by it and by section 186, Title 12, Code; and although it

will create a debt for Marshall County that county will not on the showing here made thereby exceed its debt limit under section 224 of the Constitution."

In construing § 224, this court, in Hagan v. Commissioner's Court of Limestone County, supra [160 Ala. 544, 49 So. 420], had this to say:

" * * * As has been stated, the Constitution is not to have a narrow or technical construction, but must be understood and enforced according to the plain, common-sense meaning of its terms. So understood and interpreted, the obvious intent of section 224 is to restrain counties from obtaining money either upon the general credit of the county, or by pledge or transfer of its revenue or assets, thereby creating a debt and imposing additional burdens upon the citizens, which, whether directly or indirectly, involve increased taxation."

We see no reason why the same may not be said of the restraint placed on cities and towns by § 225.

Nor do we see any sound basis for distinguishing the Hagan case from the one now before us. In the Hagan case there was levied a new "special county courthouse tax" of one-fourth of one per centum on all taxable property in the county to pay for a new court house, while in the instant case a new gross receipts tax has been levied, that is, a tax which the municipality had not theretofore tapped as a source of revenue. In the Hagan case the county and the contractor entered into an agreement for the erection and furnishing of the court house. This agreement provided for the payment of the contract price exclusively from the proceeds of the tax levied, the payments to be made in nine annual installments. It was specifically provided that no debt was thereby "created or incurred by said county, but instead thereof a transfer and assignment of the proceeds of said special tax levy to the

amounts herein stated for the foregoing named years are made to said contractor as the consideration and payment for the erection, completion and furnishing of said courthouse building." It was held that a debt, within the meaning of § 224, was thus created by the county.

The fact that in the Hagan case there was an ad valorem property tax involved, and not a license tax as in the instant case, is of no particular significance.

"If the fund from which the obligations are to be paid is to be created by the levy of a tax under the general power of taxation vested in the municipality, although the contract stipulates that no general indebtedness for the stipulated amount shall be created against the city, and that the only obligation undertaken by the city is to levy, anticipate, and pledge the tax agreed to be imposed, indebtedness is created, and the contract is void if the existing indebtedness of the municipality has been reached." 1 Dillon, Municipal Corporation, 5th Ed., § 198, p. 370.

We here observe that the wisdom of fixing an arbitrary debt limitation beyond which a city may not go, even for undertakings of universal appeal, such as hospitals, is not for this court to question. To hold that the debt limitation applies only when there is a pledge of existing tax revenue, and not when merely a potential source of tax revenue is pledged, would destroy the basic purpose of the debt limitation provision and would permit an obvious evasion of it. An existing tax revenue, by the simple expedient of repealing it, could then be made available for pledging as a potential source. We hold that whether the tax pledged is from existing or potential tax revenues is immaterial.

One further point merits attention. The case of Johnson v. City of Sheffield, 236 Ala. 411, 414, 183 So. 265, 268, sets forth a law-imposed requirement that, if necessary, the essential and legitimate expenses

of operating the town must first be paid before pledges of revenue are met. This is rested upon the authority of White v. Mayor and Council of City of Decatur, 119 Ala. 476, 480, 481, 23 So. 999, 1000, where it was stated:

"It is thoroughly well settled law that where the interest and principal of a municipal bonded debt is payable out of the general revenues of the town, no part of such revenues that is necessary to meet current, legitimate municipal expenses can be subjected to the payment thereof, but only the surplus of income after the governmental expenditures have been met or provided for can by any process of law be applied to such debt. * *, * If a given expenditure is within charter authorization, and therefore, abstractly considered, a legitimate municipal charge, the courts cannot pass upon the advisability or wisdom of its being made or incurred. That is a matter within the discretion of the municipal authorities."

Appellees urge that, the drying up of the city's revenues by repeated pledges of various sources of revenue is not a real fear because of this law-imposed requirement and an additional provision in the warrant itself providing that if revenues fail, the city may pay for its governmental functions from the proceeds of the excise tax and defer payments to the warrant holders. The effect of this argument and the clause in the warrant is to admit that in reality the pledge is of a part of the general revenue of the municipality. Being so, the proposed warrants would constitute a debt of the town within the meaning of the limitation prescribed by § 225, Constitution. Wharton v. Knight, 241 Ala. 218, 220, 2 So.2d 310, 311.

The opinion in Wharton v. Knight, supra, contains the following statement:

"So, also, obligations payable solely from the proceeds of privilege taxes, duly levied and pledged thereunto, not to become a burden on the general taxpayer, are not inhibited."

In that case Jefferson County undertook to contract for the purchase and lease of voting machines for use in the county. Payment for the machines involved charges against the general revenues of the county for several fiscal years, it being held that such obligation was chargeable against the county's debt limit. No license tax or other tax was there pledged or involved. It seems clear that the quoted statement, unsupported by any cited authority, was unnecessary to the decision in that case and is not to be taken as authoritative or controlling in the case now before us.

We here note that counsel for appellees have placed their principal reliance on the so-called "bridge decisions"—Scott v. Alabama State Bridge Corp., 233 Ala. 12, 169 So. 273; In re Opinions of Justices, 225 Ala. 460, 143 So. 900; Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695; and Rogers v. Garlington, 234 Ala. 13, 173 So. 372—and certain decisions from other states, e. g., Gruen v. State Tax Comm., 35 Wash.2d 1, 211 P.2d 651; State ex rel. Capitol Addition Bldg. Comm. v. Connelly, 39 N.M. 312, 46 P.2d 1097, 100 A.L.R. 878; and State v. City of Pensacola, Fla., 40 So.2d 569. It is not intended by this opinion to reflect at all upon the "bridge decisions". It seems to us that they are distinguishable.

On rehearing by appellee, the original opinion is extended by adding the next preceding paragraph. The application for rehearing is denied.

Reversed and rendered.

All the Justices concur.