189 So.2d 153

**William D. PINCKARD**

v.

**STATE BOARD OF EDUCATION et al.**

**4 Div. 250.**

Supreme Court of Alabama.

July 21, 1966.

Jas. G. Clower, Troy, for appellant.

Jos. B. Wiley, Troy, and M. Camper O'Neal, Dumas, O'Neal & Hayes, Birmingham, for appellee Adams.

Richmond M. Flowers, Atty. Gen., Leslie Hall and Gordon Madison, Asst. Attys. Gen., for other appellees.

LIVINGSTON, Chief Justice.

This is an appeal from a final decree dated January 13, 1966, of the Circuit Court of Pike County in an action for declaratory judgment and injunctive relief incident thereto.

The appellant, complainant in the Circuit Court, is a citizen and taxpayer of the State of Alabama and is an enrolled student of Troy State College at Troy, Pike County, Alabama, an educational institution of college rank of the State of Alabama. The appellees, respondents in the Circuit Court, are Ralph W. Adams, President of Troy State College, the State Board of Education of the State of Alabama, and the individual members of that Board.

The appellant filed a bill of complaint in the Circuit Court of Pike County for a declaratory judgment that the issuance by the State Board of Education (the State Board) of certain of its proposed bonds would create a debt of the State of Alabama prohibited by Section 213 of the Constitution of Alabama of 1901, as amended. The respondents filed answers admitting the allegations of the bill of complaint but denying that the bonds would constitute a debt of the state in violation of the Constitution. In effect, the facts are admitted with the exception just noted.

The case was submitted to the circuit court on the bill of complaint and answers. The circuit court denied the injunction, upheld the validity of the proposed bonds and rendered a declaratory judgment that the bonds would not constitute debts of the state in contravention of Section 213 of the Alabama Constitution, as amended. This appeal followed.

Troy State College needs additional housing facilities for approximately 538 men and 210 women students. The State Board of Education of the State of Alabama proposes to provide these facilities by the construction of a new dormitory and the improvement of an existing dormitory, Shackelford Hall. The cost of these new facilities will be financed by the State Board by the issuance of revenue bonds. The revenues from the new dormitory and renovated Shackelford Hall, standing alone, will not be sufficient to provide adequate security to enable the State Board to sell revenue bonds in the principal amount of $1,460,000 required for that purpose. In order to enable the State Board to effect the sale of these improvements bonds, it will be necessary to pledge, in addition, the revenues from existing facilities at Troy State College.

The aforementioned facilities at Troy State College consist of Shackelford Hall and an existing dining hall, seven existing dormitory buildings: namely, Dill Hall, Pace Hall, Pace Annex, Gardner Hall, Hamil Hall, Clements Hall, and Cowart Hall.

With the exception of Pace Hall, Cowart Hall and Shackelford Hall, the revenues

from the above-described facilities at Troy State College are already pledged to outstanding revenue bonds of the State Board. The revenues from Dill Hall are pledged to the payment of the principal of and interest on the 1957 Bonds, the revenues from Pace Annex to the 1959 Bonds, the revenues from Gardner Hall to the 1961 Dormitory Bonds, the revenues from Hamil Hall and Clements Hall to the 1962 Bonds, and the revenues from the dining hall to the 1961 Dining Hall Bonds. Each of the several resolutions of the State Board authorizing the issuance of these respective bond issues provides for several funds: a revenue fund into which all revenues are required to be deposited and from which current expenses of operation and maintenance of the project are paid, a bond and interest fund for the payment of principal of and interest on the bonds, including a debt service reserve therefor, and a maintenance or repair and replacement reserve fund. Each of these several resolutions requires that the revenues from the respective projects financed thereby be paid into these several funds.

Any pledge of revenues from existing facilities other than from Pace Hall, Cowart Hall and Shackelford Hall, to the payment of the proposed improvement bonds, the 1965 Bonds, Series F, would be secondary and subordinate to the prior pledge of these revenues to the outstanding bonds as described above and to the prior disposition of revenues into the several funds in the respective amounts as provided in the resolutions authorizing the issuance of the outstanding bonds. The existence of this outstanding prior pledge of revenues materially affects the security of the proposed improvement bonds and their marketability.

The State Board proposes to issue, pursuant to the provisions of Sec. 37, Title 52 of the Alabama Code of 1940, as amended, $3,336,000 principal amount of Troy State College Housing and Dining System Revenue Bonds of 1965, Series A, B, C, D, E (refunding bonds), and F (improvement bonds), dated November 1, 1965 (the 1965 Bonds) for the following purposes:

(1) Series A Bonds, in the principal amount of $323,000, bearing interest at the rate of 2⅞% per annum, payable semiannually, and maturing serially on November 1 in each of the years 1966 through 1996, to refund a like principal amount of outstanding revenue bonds of the Board dated October 1, 1957 (the "1957 Bonds"), bearing the same rate of interest, heretofore issued to pay the cost of acquiring and constructing a dormitory building at Troy State College (Dill Hall), and payable solely from the rents and revenues from said dormitory building.

(2) Series B Bonds, in the principal amount of $217,000, bearing interest at the rate of 3% per annum, payable semiannually, and maturing serially on November 1 in each of the years 1966 through 1998, to refund a like principal amount of outstanding revenue bonds of the Board dated April 1, 1959 (the "1959 Bonds"), bearing the same rate of interest, heretofore issued to pay the cost of constructing a dormitory at Troy State College (Pace Annex), and payable solely from the rents and revenues of said dormitory building.

(3) Series C Bonds, in the principal amount of $318,000, bearing interest at the rate of 3½% per annum, payable semiannually and maturing serially on November 1 in each of the years 1966 through 2001, to refund a like principal amount of outstanding revenue bonds of the Board dated November 1, 1961 (the "1961 Dormitory Bonds"), bearing the same rate of interest, heretofore issued to pay the cost of construction of a dormitory at Troy State College (Gardner Hall), and payable solely from the rents and revenues of said dormitory building.

(4) Series D Bonds, in the principal amount of $163,000, bearing interest at the rate of 3½% per annum, payable semiannually and maturing serially on November 1 in each of the years 1966 through

2001, to refund a like principal amount of outstanding revenue bonds of the Board dated November 1, 1961 (the "1961 Dining Hall Bonds"), bearing the same rate of interest, heretofore issued to pay the cost of constructing a dining hall at Troy State College, and payable solely from the revenues of said dining hall.

(5) Series E Bonds, in the principal amount of $855,000, bearing interest at the rate of $3\frac{3}{8}\%$ per annum, payable semi-annually and maturing serially on November 1 in each of the years 1966 through 2002, to refund a like principal amount of outstanding revenue bonds of the Board dated November 1, 1962 (the "1962 Bonds"), bearing the same rate of interest, heretofore issued to pay the cost of construction of two dormitory buildings at Troy State College (Hamil Hall and Clements Hall), and payable solely from the rents and revenues of said two dormitory buildings.

(6) Series F Bonds, in the principal amount of $1,460,000, bearing interest at the rate of 3% per annum, payable semi-annually, and maturing serially on November 1 in each of the years 1968 through 2005, to pay the cost of acquiring and constructing a new dormitory at Troy State College with appurtenant facilities, to house approximately 536 men students, and of renovating and converting an existing dormitory (Shackelford Hall) to provide housing facilities for approximately 210 women students (the "New Facilities").

The State Board proposes a combined refunding and improvement revenue bond issue consisting of $1,876,000 principal amount of refunding bonds (Series A through E, inclusive) to refund a like principal amount of the outstanding bonds described above, and $1,460,000 principal amount of improvement bonds, designated Series F, for the new construction and improvement.

The 1965 Bonds will be payable from and will be secured equally and ratably, without preference or priority of one series of bonds over another, by a pledge of the revenues from all the facilities described above, including the existing facilities.

Under this proposed plan of financing, all of the bonds, refunding and improvement bonds, will be secured by a first lien on pledged revenues, and the State Board will be able to effect a sale of the bonds at a substantial saving in interest cost. The State Board has obtained a commitment from the U.S. Government to purchase the improvement bonds, the 1965 Bonds, Series F, at par, at an interest rate of 3% per annum. The U.S. Government, which holds all of the outstanding bonds to be refunded, has also agreed to exchange these bonds for the proposed refunding bonds, the 1965 Bonds, Series A through E, paying the same interest rate as the bonds to be refunded. These commitments by the U.S. Government are subject, however, to the condition that the State Board offer all of these bonds at public sale, and the bonds may be sold to private investors if an equal or better bid for an equal or lower net interest cost is made at the public sale.

The validity of the improvement bonds, the 1965 Bonds, Series F, is not questioned by appellant and this aspect of the proposed financing is not an issue in this case.

Section 37, Title 52, Code of Alabama 1940, as amended by Act No. 623, Acts of Alabama 1957, p. 893, provides, in pertinent part, as follows:

"Section 37. (a) Authority is hereby granted to the state board of education and the trustees of all state institutions respectively, where education is a part of the program of the institution, to borrow money from federal agencies, or from any private person, or corporation, or lending agency, for the purchase, erection, or alteration of buildings, purchase of land, beautification of grounds, and the erection and maintenance of swimming pools at the several state institutions, and to comply with the requirements of such federal agencies, or of such private persons, or corporations,

or banking agencies, promulgated in reference to moneys so loaned. The state board of education and the trustees of the state institution in question are authorized to issue bonds, warrants or other evidences of debt, for the repayment of the amount borrowed under this section, with interest at a rate not to exceed five percent per annum payable semiannually, and to pledge therefor the fees from students to be levied by the institution and other moneys not appropriated by the state to the institution. The bonds, warrants or other evidences of debt issued under the provisions of this section shall not be an obligation of any nature whatsoever of the state, and shall not be payable out of any moneys provided for or appropriated by the state to the institution in question. The state board of education or the trustees of any of said state institutions shall have power at any time or from time to time to issue new bonds in place of those previously issued by such state board of education or said trustees under this section and then outstanding, and subject to call, which new bonds may have terms like or different from the bonds to be refunded, and may be secured by provisions like or different from the bonds to be refunded; provided, however, that such new bonds shall not constitute an extension of the time when the principal of the bonds to be refunded shall be paid or increase the principal thereof. Such bonds may be exchanged for outstanding bonds or may be sold and the proceeds applied to the payment of outstanding bonds, provided that such outstanding bonds can be paid within five months after the issuance of the new bonds."

The State Board has ample statutory authority under Section 37 of Title 52, supra, to effect the proposed refinancing. The appellant does not question the statutory authority of the State Board to effect the proposed refinancing or the necessity for or the propriety of the proposed financing. Appellant's sole contention is that the refunding bonds will not be issued for the purpose of acquiring new facilities or extending existing ones within the meaning and intent of Amendment CLX, and, accordingly, the refunding bonds payable from revenues of existing facilities will constitute a debt of the State prohibited by Section 213 of the Alabama Constitution.

We must look to Amendment CLX of the Constitution of Alabama 1901, which provides:

"Revenue bonds and other securities at any time issued by or on behalf of any state university, college or institution of learning for the purpose of acquiring, constructing and equipping any new building or facility or for the purpose of enlarging, extending or improving any existing building or facility shall not be deemed to constitute debt of the state within the meaning of section 213, as amended, of the Constitution, if by their terms such bonds or other securities are not made a charge on the general credit or tax revenues of the state but are made payable solely out of revenues derived from the operation of any existing building or buildings or facility or facilities as well as from the new building or facility to be acquired or constructed with the proceeds thereof or from the enlargements, extensions or improvements to any existing building or facility to be acquired or constructed with the proceeds thereof."

A constitution is an instrument of a permanent and abiding nature and constitutional provisions accordingly are written in general terms, enunciate general principles and provide general directions with the omission of specific details. 16 Am.Jur.2d, Constitutional Law, Sections 4 and 5, pp. 182–183. While it is true that there is no mention of refunding bonds in Amendment CLX, that is a mere detail and its omission is not important.

■ In reviewing a proposed refunding operation which will provide for a savings in interest costs, the court should look

to the substance of the financial plan rather than to its mere form. Taxpayers and Citizens of Shelby County v. Shelby County, 246 Ala. 192, 20 So.2d 36; and County Board of Education of Russell County v. Taxpayers and Citizens, 276 Ala. 472, 163 So.2d 629.

Section 37 of Title 52, supra, specifically provides that the refunding bonds may have terms like or different from the bonds to be refunded and may be secured by provisions like or different from the bonds to be refunded. Under Sec. 37, the new bonds shall not constitute an extension of time when the principal of the bonds to be refunded shall be paid or increase the principal thereof. The refunding bonds, the 1965 Bonds, Series A through E, will comply with this requirement of Sec. 37. Under Sec. 37, the refunding bonds may be exchanged for outstanding bonds or may be sold and the proceeds applied to the payment of outstanding bonds, provided that the outstanding bonds can be paid within five months after the issuance of the new bonds. These requirements will also be complied with. Bonds issued under Sec. 37 cannot be made an obligation of any nature whatsoever of the State and shall not be payable out of any moneys provided for or appropriated by the State to the institution in question. These requirements of Sec. 37 will likewise be complied with.

■ The bonds to be refunded were each heretofore issued for the purpose of acquiring and constructing a new building or facility within the literal language of Amendment CLX. The 1957 Bonds were issued to acquire Dill Hall, the 1959 Bonds to acquire Pace Annex, the 1961 Dormitory Bonds to acquire Gardner Hall, the 1962 Bonds to acquire Hamil Hall and Clements Hall, and the 1961 Dining Hall Bonds to acquire the existing dining hall at Troy State College. It is true that the 1957 Bonds and the 1959 Bonds were issued prior to December, 1961, the date of the adoption of Amendment CLX. The 1961 Dormitory Bonds, the 1961 Dining Hall Bonds, and

the 1962 Bonds were issued subsequent to the date of the adoption of the amendment. Amendment CLX applies, however, to bonds "at any time issued," and accordingly does not differentiate between bonds issued before its adoption and bonds issued after its adoption. All of the bonds to be refunded are therefore bonds as described and covered by Amendment CLX. They are bonds issued at any time to acquire and construct new facilities at Troy State College, and they evidence the revenue obligations of the State Board incurred to acquire and construct such facilities.

The refunding of these outstanding bonds will not change the purpose for which the obligation was incurred. The refunding bonds, the 1965 Bonds, Series A through E, will continue to evidence an obligation of the State Board incurred for the acquisition of new facilities to pay the cost of which the refunded bonds were initially issued. Bonds issued to refund obligations incurred to acquire facilities are essentially bonds to acquire these facilities. The 1965 Bonds, Series A through E, will accordingly be issued for the purpose of acquiring new facilities within the meaning and intent of Amendment CLX, and in accordance with the provisions of this amendment, the bonds will not constitute a debt of the State under Sec. 213 of the Alabama Constitution. For analogous principles, see Browder v. Board of Commissioners of the City of Montgomery, 228 Ala. 687, 155 So. 366; Kendrick v. City of Birmingham, 242 Ala. 112, 5 So.2d 82; Taxpayers and Citizens of Lawrence County v. Lawrence County, 273 Ala. 638, 143 So.2d 813; and Dodson v. Beaird, 237 Ala. 587, 187 So. 862.

Appellant argues that moneys on deposit in the various funds and accounts heretofore established in connection with the various issues of bonds to be refunded were, by the proceedings issuing those bonds, irrevocably pledged for the security and for the payment of the bonds to be refunded; that upon the payment or refunding of the outstanding bonds, all of these moneys and

securities are to be transferred over to new accounts for the security and payment of the 1965 Bonds; that such proceedings will constitute a debt of the State of Alabama in contravention of Section 213 of the Constitution of Alabama 1901.

We have shown above that the existing facilities can be pledged to the 1965 Bonds without creating a debt of the State in contravention of Section 213 of the Constitution. In other words, the bonds to be refunded can be paid in full at times provided for in the issuance of said bonds, and when so paid, there is nothing to prevent the pledging of the revenues from the existing facilities to the payment of the 1965 Bonds as we have demonstrated above. That is one purpose of Amendment CLX of the Constitution. Therefore, there is no merit in this contention of appellant.

The decree of the lower court is due to be, and is, affirmed.

Affirmed.

LAWSON and GOODWYN, JJ., concur.

COLEMAN, J., concurs in the result.