SHORES, Justice
(dissenting).
I dissent. The sole issue before us is whether the warrants that were validated by the Circuit Court of Shelby County constitute a debt or indebtedness of Shelby County within the debt limit imposed upon counties by § 224, as amended by Amendment 342, of the Alabama Constitution of 1901. Although the warrants are entitled “limited obligation refunding warrants” and will be issued to refund or retire the debts on existing warrants before the maturity date of those warrants, our case law indicates that the limited obligation warrants are considered an indebtedness of the County pursuant to § 224 of the Alabama Constitution. Therefore, the warrants may not-be validated unless they do not increase the indebtedness of the County beyond the limits of Amendment 342.
*263 The majority notes that “the indebtedness evidenced and ordered paid by the [limited obligation] warrants shall be a limited obligation of the County payable solely from, and secured by a pledge of, the proceeds of the special tax.” 641 So.2d at 260. It is undeniable that the warrants are obligations of the county. They are being issued to retire debts not of the county,[2] but of independent authorities, and are to be repaid from revenues produced by those authorities. This Court wrote in Norton v. Lusk, 248 Ala. 110, 26 So.2d 849 (1946):
“The Constitution has also made a limitation on the amount of indebtedness which a county (§ 224) or a city (§ 226) may create.
“This has been construed to apply not only to an obligation to which the county or city pledges its full faith and credit, called a general obligation, but also when the county or city pledges existing property or revenue from existing sources to be derived in the future.... The full faith and credit of the county or city is not thereby pledged, but a part of it is pledged.”
248 Ala. at 117, 26 So.2d at 854. The special tax will continue to be levied until 2003, or until the County’s indebtedness as of June 1, 1993, has been paid off by the proceeds of that tax. The proceeds from the special tax (part of which is to be used to pay the County’s obligation on the limited obligation refunding warrants) represent “revenue from existing sources to be derived in the future.” Id. Therefore, the County’s obligation or indebtedness created by the warrants is a “constitutional debt” under § 224 and thus falls “within the inhibition of the debt limit provisions of our constitution.” Wharton v. Knight, 241 Ala. 218, 220, 2 So.2d 310, 311 (1941).
Rollings v. Marshall County, 263 Ala. 317, 82 So.2d 428 (1955), states:
“[T]he levy of a special tax under the second proviso of section 215 [of the Alabama Constitution], ... and the issuance of warrants payable out of such revenue in future years for the purposes there specified, constitute a debt within the meaning of sections 215 and 224, supra. So that a county which has reached its debt limit under section 224 cannot avail of the second proviso of section 215.”
263 Ala. at 321, 82 So.2d at 431, citing Hagan v. Commissioner’s Court of Limestone County, 160 Ala. 544, 49 So. 417 (1909).[3] In other words, warrants payable out of special tax revenues constitute a debt of the county under § 224, and such warrants cannot be validated if they increase the county’s indebtedness beyond the debt limit of § 224.
Taxpayers & Citizens of the Town of Georgiana v. Town of Georgiana, 265 Ala. 654, 93 So.2d 493 (1956), is controlling here. Geor-giana correctly explains when an obligation by a county or city creates a debt within the meaning of § 224 or § 225.[4] An obligation creates a debt within the meaning of § 224 or § 225 if the “obligation assumed by the city ... directly or indirectly increases the burden of taxation.” If the obligation increases the tax burden, it “is a debt in the constitutional sense.” 265 Ala. at 657, 93 So.2d at 496.
The County argues that the burden of taxation could be reduced by the limited obligation refunding warrants, and that, therefore, the refunding warrants should not be applied toward the constitutional debt limit of § 224.[5] This argument is without merit. *264 The debt that is being refinanced is not the debt of the county. The existing warrants are revenue warrants payable solely from revenue produced by the issuing authorities. Under the proposed scheme, the county assumes those debts and they will become payable from taxes imposed by the county. The fact that the proposed tax is a special tax does not diminish the county’s obligation under § 224.
The debt limit provisions of our constitution do not apply to revenue warrants because the indebtedness on revenue warrants is payable solely out of the income or revenue that is derived from the facilities funded by those revenue warrants.
“[T]he county or city does not pledge its faith or credit when the indebtedness incurred to purchase or develop new property or facilities is made repayable solely out of the income to be derived from such property or facilities. We have said that such an obligation by a county or city does not create a debt within the meaning of §§ 224 or 225.”
Georgiana, supra, 265 Ala. at 657, 93 So.2d at 496 (quoting Norton v. Lusk, 248 Ala. at 117, 26 So.2d at 854).
The existing sewer revenue warrants and the courthouse revenue warrants are not obligations that directly or indirectly increase the burden of taxation on Shelby County’s citizens. The indebtedness on these revenue warrants is repayable solely out of the income derived from the facilities funded by those warrants; thus, this indebtedness is not payable out of the special tax, and it is not a debt within the meaning of § 224. The limited obligation warrants, because they will be payable from proceeds of the special tax, will be obligations that will directly or indirectly increase the burden of taxation. By replacing the revenue warrants with limited obligation warrants, whose indebtedness is to be payable from the proceeds of the special tax, the County will increase the tax burden on its citizens by an amount equal to the cost of refunding the revenue warrants (plus the cost of issuing the limited obligation warrants). By retiring the revenue warrants, and paying for this retirement by issuing limited obligation warrants, the County will create nearly $30,000,000 in new county debt within the meaning of § 224.
Because the special tax was levied to pay off the indebtedness of the County, and because this indebtedness will be increased by nearly $30,000,000 if the limited obligation warrants are issued, the proposed issue of the warrants will increase the tax burden on the citizens of Shelby County. Therefore, because the limited obligation warrants will create a debt under § 224, we can affirm the validation of the warrants only if this additional debt is within the limits of § 224. Because the record indicates that this additional debt will cause the County to exceed the maximum debt limit allowed by § 224. I would reverse the trial court’s judgment validating these proposed warrants.
Of course, the County can refund the series 1990-B warrants, because they are presently general obligation warrants, and the indebtedness on these general obligation warrants has already been applied toward the debt limit under § 224. In Taxpayers & Citizens of Shelby County v. Shelby County, 246 Ala. 192, 20 So.2d 36 (1944), we held that the issuance of refunding bonds by Shelby County for the purpose of using their proceeds to retire the county’s obligations did not create new indebtedness under the debt limitation provisions of § 224. 246 Ala. at 196, 20 So.2d at 39. However, that case involved the retirement of obligations that were already debt limit obligations under § 224. It did not involve the issuance of bonds that are constitutional debts under § 224 in order to retire revenue bonds that are not constitutional debts under § 224.
The County quotes Wharton v. Knight, supra, for the proposition that “obligations payable solely from the proceeds of privilege taxes, duly levied and pledged thereunto, not to become a burden on the general taxpayer, are not inhibited [under § 224].” 241 Ala. at 220, 2 So.2d at 311. However, in Georgiana, the Court dismissed that statement as dictum, stating, “It seems clear that the quoted statement, unsupported by any cited authori *265 ty, was unnecessary to the decision in that case and is not to be taken as authority or controlling in the case now before us.” Georgiana, supra, 265 Ala. at 659, 93 So.2d at 498.
Debt limit restrictions like those in § 224 were established “for the purpose of providing a safeguard against extravagant or unwise expenditure of public funds” and ‘“to protect persons residing in municipalities from the abuse of their credit and the consequent oppression of burdensome, if not ruinous, taxation.’” Taxpayers & Citizens of Shelby County v. Shelby County, 246 Ala. at 196, 20 So.2d at 39, quoting 38 Am.Jur. Municipal Corporations p. 99. “‘Attempted evasions of constitutional provisions as to debt limit are viewed with disfavor by the courts.’” Id., quoting 38 Am.Jur. p. 107. Therefore, “care must be taken that no precedent be established which would lead to any method by which such restrictions could be circumvented.” Id.
For the reasons above, and because the majority opinion would establish a precedent that would allow the debt limit restrictions of our constitution to be circumvented, I respectfully dissent.
ALMON, J., concurs.

. Except for the retirement of the series 1990-B general obligation warrants, which are debts of Shelby County.

. The second proviso of § 215 provides for the levy and collection of special county taxes that are applied exclusively to the payment of debts arising out of the erection, construction, or maintenance of necessary public buildings, bridges, or roads.

. Section 225 of the Constitution establishes debt limits for certain cities, towns, and municipal corporations and is a counterpart to § 224, which establishes the debt limits for counties. Decisions construing § 225 are applicable to the interpretation of § 224. In re Opinion of the Justices No. 33, 230 Ala. 673, 163 So. 105 (1935).

. The purpose of the refunding warrants is to refund the debt on the existing courthouse revenue warrants, sewer revenue warrants, and Series 1990-B general obligation warrants. Because interest rates are lower now than they were when the existing warrants were issued, the County intends to pay off the aggregate principal *264 and interest on the existing warrants in advance of their maturity dates, and to cover the costs of paying off these warrants by issuing the refunding warrants at a lower interest rate.